UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OBADIAH LAPITAN,<br><br>Plaintiff,<br><br>v.<br><br>EXXONMOBIL OIL CORPORATION,<br><br>Defendant. | No. 24 C 02109<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Obadiah Lapitan sues ExxonMobil Oil Corporation ("Exxon") alleging claims of construction negligence, common law negligence, and premises liability after his back was injured while handling an O'Brien Box at Exxon's Oil Refinery. R. 1 Ex. A. Exxon moves for summary judgment. R. 33. For the following reasons, that motion is granted.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advoc. Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the

light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Background**

Lapitan was employed by MKD Electric as an Instrumentation Technician. R. 35 ¶ 18. MKD Electric was contracted by the ExxonMobil Oil Refinery in Joliet, Illinois. *Id.* ¶¶ 19, 21. On May 7, 2021, Exxon and MKD workers engaged in a coordinated "refinery turnaround," which is a scheduled shutdown period for large-scale maintenance and equipment replacement. *Id.* ¶¶ 19, 21–22. That morning, Lapitan was assigned to the crude unit to inspect and remove transmitters alongside Exxon employee Scott Mitchell ("Mitchell"), also an Instrumentation Technician. *Id.* ¶ 22.

Specifically, Lapitan and Mitchell were tasked with removing a flow transmitter enclosed in an O'Brien Box ("Box"), which is a standard metal housing used to protect refinery instruments from weather exposure. *Id.* ¶ 23. The Box was accessible only by passing it down from above. *Id.* ¶ 26. Mitchell worked from a scaffold platform positioned above Lapitan. *Id.* ¶ 27. Lapitan was aware that Mitchell was going to hand him the Box and that he was to receive it from below. *Id.* ¶ 28; R. 35 Ex. A at 38:11–39:4. At the time, Lapitan was wearing personal protective

equipment, including ear plugs, glasses, flame retardant clothing, steel-toed shoes, and a hard hat. R. 35 ¶ 24.

Lapitan raised his arms to receive the Box. *Id.* ¶ 29. Mitchell then handed the Box to Lapitan, verbally warned Lapitan that he was going to let go of the Box, and waited until Lapitan was holding the Box in his hands before letting go. *Id.* ¶¶ 30–31. Lapitan and Mitchell maintained control of the Box throughout the handoff. *Id.* ¶ 32.

Lapitan felt a snap in his lower back as he received the Box. *Id.* ¶ 33. He placed the Box on the floor. *Id.* ¶ 34. He then continued to work the full day until 6:00 p.m. without reporting any pain or incident to Mitchell, his MKD supervisor, or any Exxon personnel. *Id.* ¶ 35.

Lapitan filed suit against Exxon and Mitchell on April 28, 2023, in the Circuit Court of Will County, Illinois. R. 1. On February 20, 2024, Plaintiff voluntarily dismissed all claims against Mitchell. R. 35 ¶ 8. On March 13, 2024, the case was removed to federal court due to diversity of citizenship. *Id.* ¶ 9; R. 1. Following Lapitan's dismissal of Mitchell, only three counts remain: Count I for construction negligence, Count IV for premises liability, and Count VII for common law negligence. Exxon moves for summary judgment. R. 1 Ex A.

## Discussion

To establish both construction and common law negligence, a plaintiff must show a duty owed by the defendant, a breach of that duty, and an injury proximately caused by the breach. *See Johnson v. Armstrong*, 2022 IL 127942, ¶ 51 (citations omitted); *Calderon v. Residential Homes of Am., Inc.*, 381 Ill. App. 3d 333, 340 n.2

(1st Dist. 2008) (explaining that "construction negligence claims are evaluated in accordance with the common law negligence principles"). To succeed on a motion for summary judgment, Exxon need only show that Lapitan cannot prevail on any one of the elements. *Keedi v. Menard, Inc.*, No. 3:20-CV-50375, 2021 WL 5759272, at *2 (N.D. Ill. Dec. 3, 2021).

To establish a claim based on premises liability, a plaintiff must prove the three elements of ordinary negligence plus three more: (4) there was a condition on the defendant's property that presented an unreasonable risk of harm, (5) the defendant knew or should have known of the condition and the risk, and (6) the defendant reasonably could have anticipated that others on the premises would fail to discover, recognize, or protect themselves from the danger. *Swayka v. Menard, Inc.*, No. 24 C 8786, 2025 WL 3124151, at *2 (N.D. Ill. Nov. 7, 2025) (citations omitted). But if it is the defendant's conduct that creates the injury, rather than a dangerous condition on the property, the claim is one of ordinary negligence rather than premises liability. *Id.*

Lapitan cannot establish that Exxon breached its duty as required for each count. Therefore, Exxon is entitled to summary judgment.

Lapitan argues that Exxon breached its duty in the following ways:

> a. Failed to make a reasonable inspection of the premises and/or the work being done thereon, when the Defendant, by and through its agents/employees (actual or apparent), knew, or in the exercise of ordinary care should have known, that said inspection was necessary to prevent injury to the Plaintiff;
>
> b. Improperly operated, managed, maintained and controlled the aforesaid premises, so that as a direct and proximate result thereof, the Plaintiff was injured;

c. Failed to provide the Plaintiff with a safe place within which to work;

d. Failed to warn the Plaintiff of the dangerous conditions then and there existing in and around the O'Brien Box and brackets, or similarly named structure, when the Defendant, by and through hits agents and employees (actual or apparent) knew, or in the exercise of ordinary care should have known, that said warning was necessary to prevent injury to the Plaintiff;

e. Permitted the existence of a hazard in Plaintiff's work area;

f. Failed to properly plan, schedule and coordinate the work;

g. Created a hazard on the premises to wit the improper transfer of the O'Brien Box and bracket or similarly named structure; and

h. Failed to provide a motorized or other mechanical mechanism to properly transfer or move the equipment/O'Brien Box/bracket, or similarly named structure, to Plaintiff and others.

i. Allowed inhibited access to his work;

j. Failed to properly affix/remove/move/transfer/handle the O'Brien Box/bracket or similarly named structure;

k. Failed to properly maintain the support system for the O'Brien Box/bracket, or similarly named structure;

l. Failed to handle and control the O'Brien Box and bracket, or similarly named structure in question in such a manner so that it would not fall onto Plaintiff;

m. Moved the O'Brien Box and bracket, or similarly named structure, in a manner that Plaintiff knew or should have known was likely to cause the box and bracket to fall onto Plaintiff;

n. Moved the O'Brien Box, or similarly named structure, and in a manner causing the Box and bracket to fall onto Plaintiff;

o. Attempted to move the O'Brien Box and bracket, or similarly named structure without maintaining a proper and sufficient grip on the O'Brien Box and bracket, or similarly named structure.

p. Lost his grip on the O'Brien Box and bracket, or similarly named structure, while attempting to hand it over/transfer it to Plaintiff; and

q. Failed to properly warn Plaintiff that he had lost control of the O'Brien Box and bracket, or similarly named structure.

R. 1 Ex. A at pp. A-5 ¶ 9, A-7–A-9 ¶ 6, A-11–A-12 ¶ 9. However, the factual record does not provide support for these allegations.

Lapitan has not provided any evidence supporting general safety issues at the Exxon refinery. The record centers on one isolated incident of transferring a Box on May 7, 2021. Therefore, no reasonable jury could find a breach based on Exxon failing to inspect, operate, manage, or maintain the refinery nor that Exxon failed to provide a safe place to work.

Lapitan's arguments regarding the transfer of the Box are similarly unsupported. In his complaint, Lapitan alleges that the Box was "dropped" on him and "f[e]ll" on him, but his own testimony repeatedly states that the Box was "handed" to him, that he was verbally warned that the Box would be released, and that he received the Box in his hands before placing it on the ground. R. 35 Ex. A at 38:13–14 ("[H]e handed it to me."), 60:4–7 ("So [Mitchell] handed it to me . . . . Once I held -- grabbed the O'Brien box, he -- he let go of it on his end . . . ."), 61:12–19 ("I lifted my hands up to receive it, and he lowered it down. And -- and when we – and then when I -- when I received it, he let go of it. . . . And I lifted my hands up, and he handed it to me, and it was just the right distance. And when -- and when I had it in my hands, he let go."), 62:7–9 ("[Mitchell] did say he was going to let go . . . ."). Lapitan's testimony thus directly contradicts his allegations of breach due to the Box falling on him, being dropped on him, or Mitchell losing control over the Box.

Rather, the record reflects that Lapitan was injured while engaging in a standard workplace activity of moving a Box. "The basis for liability in a negligence

action is not the mere fact of injury but that an injury has been caused by fault." *Teter v. Clemens*, 112 Ill. 2d 252, 258 (1986). Lapitan has not provided facts to support that Exxon was at fault. Indeed, Lapitan was familiar with these boxes and had previously worked with them. R. 35 Ex. A at 31:23—32:3 ("Q. Have you worked with O'Brien boxes before May 7, 2021? A. Yes. Q. O'Brien boxes and flow transmitters are common in your line of work; true? A. Yes."). And both Mitchell and Ryan Ermey, Lapitan's Exxon supervisor during the relevant period, testified that transferring O'Brien boxes by hand from an elevated position was commonplace. R. 35 Ex. I at 65:6–66:8; R. 35 Ex. J at 108:22–109:15.

Lapitan maintains that, even if commonplace, the method of transfer was unsafe because the Box was too heavy to receive manually from above. The problem with this argument is that the weight of the Box is unknown. Lapitan repeatedly testified at his deposition that he did not know the weight of the Box, and even stated that the Box itself was not heavy. R. 35 Ex. A at 40:4–8 ("Q. Do you know how much that O'Brien box in the picture with its contents weighs? A. I don't know how heavy it is exactly, but that's not the real heavy part. The heavy part was the bracket that was attached to it."), 56:2–3 ("Q. And you said the box was about 2 feet by 3 feet, but it was heavy; right? A. (In English) I cannot remember that part, Attorney.").

Nearly one year later, and after the close of discovery, Lapitan filed an affidavit along with his response to Exxon's motion for summary judgment claiming that the combined weight of the Box and an attached bracket was 50 pounds. The Court

declines to consider this late-filed affidavit.[1] *See Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990) ("In view of its tardy submission, it is for the district court to decide whether or not to consider [an] affidavit" filed with a "response to [a] motion for summary judgment."). Even if the Court considered the affidavit, the weight is inadmissible as hearsay. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) ("[A] party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment."). Lapitan provides no explanation for how he learned the weight of the Box and bracket. If a third party provided Lapitan with the weight, he or she should have timely been deposed or provided an affidavit. Because this information could not be heard by a jury at trial,

[1] Lapitan argues that the affidavit is necessary to clarify his deposition testimony because the interpreter at the deposition spoke Tagalog, while Lapitan speaks a regional Philippine dialect that "shares some vocabulary" with Tagalog but "differ[s] significantly in expression, idiom, and nuance." R. 39 at p. 9. However, Lapitan was represented by counsel at his deposition and did not raise any translation issues until filing the affidavit ten months later. Lapitan frequently responded to questions at his deposition in English, and confirmed that he spoke English at work and regularly spoke English with his attorney. R. 35 Ex. A at 50:8–11 (Ms. Longo: "Just a reminder, Obadiah. You and I have spoken in English together, but the translator is still going to translate for me too; okay? A. (In English) Okay."), 65:2–4 ("Q. Did you talk to most people at work in English like you usually talk to me? A. Yes."). Moreover, the majority of Lapitan's affidavit is entirely consistent with his deposition. Therefore, the Court is not convinced that the affidavit was offered in good faith due to translation issues. The primary new piece of information included is the weight of the Box, which Lapitan does not argue was a mistranslation. Rather, he claims, "I did not learn until after my injury that the combined weight was approximately 50 pounds." R. 39 Ex. B. ¶ 8. If Lapitan knew the weight of the Box prior to his deposition, he should have testified as such. "[A] party's later submission of an affidavit inconsistent with that party's deposition testimony will not raise a disputed issue of fact or prevent the entry of summary judgment." *Morris v. Margulis*, 197 Ill.2d 28, 37 (2001). And if Lapitan later reliably learned the weight, that should have been disclosed to Exxon along with the source.

the Court cannot consider it here. *Id.*; *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence . . . "). And without knowing the weight of the Box, no reasonable jury could find that handing it to Lapitan was unsafe and therefore that a breach of duty by Exxon occurred.

Lapitan further argues that the bracket attached to the Box "increased the weight" and made the Box "more unwieldy" to handle. R. 39 at pp. 5, 7. Once again, the exact weight of the bracket is unknown. Notwithstanding, the facts indicate that the bracket was approximately 4 inches by 6 inches in size and about 1/8 inch thick. R. 39 Ex. E at 64:13–22. An Exxon employee testified that he "would be surprised if it weighed more than a pound," and that each of the hundreds of O'Brien boxes he removed in his time at Exxon still had the bracket attached the entire time. *Id.* at 64:19–22, 69:17–70:5. Therefore, this argument similarly fails to support a breach.

In addition to his personal affidavit, in response to summary judgment, Lapitan for the first time attached an affidavit from an "expert safety consultant," David J. Soderman. R. 39 Ex. D. Dr. Soderman's findings rely entirely on Lapitan's affidavit listing the combined weight of the Box and bracket as 50 pounds. *Id.* ¶ 1. Because this weight figure is inadmissible and unsupported, the Court cannot rely upon Dr. Soderman's findings. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment."

(citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993))); *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989) (explaining that expert "affidavits supporting and opposing motions for summary judgment" must engage in "a process of reasoning beginning from a firm foundation"). Moreover, under Rule 26(a)(2), a party cannot rely on an expert affidavit to oppose summary judgment unless it has first disclosed that expert testimony. Fed R. Civ. P. 26(a)(2); *Mannoia v. Farrow*, 476 F.3d 453, 456 (7th Cir. 2007). Rule 37(c)(1) provides that failure to make a required disclosure means the party cannot use the information or witness in a motion unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Lapitan provides no justification for the late filing, and Exxon was harmed by being unable to depose Dr. Soderman. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758–59 (7th Cir. 2004) (affirming exclusion of expert testimony where defendants were denied the opportunity to question witnesses in their expert capacity because plaintiffs failed to disclose them as experts until after defendants moved for summary judgment). For both reasons, Dr. Soderman's affidavit will not be considered by the Court.

Lapitan next asserts that a "hoist, rope, pulley, or any other mechanical lowering device" should have been utilized. Lapitan does not provide admissible support that such mechanism was necessary for transferring the Box nor that it would have prevented injury. Unsupported speculation is insufficient to defeat a summary judgment motion. *Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 971 (N.D. Ill. 2014) (citing *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir.

1994)). Lapitan relies on the testimony of Tom Shilkuski, a former Exxon supervisor, who stated that handing a box down from a scaffold would be "awkward." R. 39 Ex. E at 60:11–16. But Shilkuski never proposes that an alternative lowering device should have been used, and in fact repeatedly affirmed that handing a box down from a scaffold "happens" and that if he was in Mitchell's situation he would have handed the Box down in the same manner. *Id.* at 60:17, 68:3–12, 73:7–21. At bottom, it is possible that even if lowered by another means, Lapitan still could have suffered injury when handling the Box. Therefore, the lack of an alternative mechanism does not raise a triable issue of breach.

Lapitan further argues that the work was being rushed R. 39 at p. 2. However, he provides no factual support for this contention; nothing in the record indicates that the Box would have been transferred in a different manner if given more time. As discussed, the factual record supports that boxes were regularly transferred by hand, including from a higher elevation. R. 35 Ex. I at 65:6–66:8; R. 35 Ex. J at 108:22–109:15.

Lapitan has not provided any facts from which a reasonable jury could find that Exxon breached its duty. Therefore, a reasonable jury could not find Exxon liable for negligence, construction negligence, or premises liability, and the Court need not discuss proximate cause. Exxon is entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, the Court grants Exxon's motion for summary judgment.

ENTERED:

Thomas M Durkin

Honorable Thomas M. Durkin
United States District Judge

Dated: November 2, 2026